IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DOROTHY MURRAY<br>Plaintiff<br>v. | : | CIVIL ACTION NO: |
| THERMO FISHER SCIENTIFIC, INC.,<br>LISA ALLESCH and<br>LAURA KRYZYMALSKI<br>Defendants | : | JURY TRIAL DEMANDED |

# CIVIL ACTION COMPLAINT

## I. PRELIMINARY STATEMENT

1. This is an action for an award of damages, attorneys' fees, and other relief on behalf of the Plaintiff, Dorothy Murray ("Murray"), a former employee of Thermo Fisher Scientific, Inc., (hereafter, "Thermo Fisher"), who has been harmed by the Defendants.

2. This action is brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§621-634, Title VII of the Human Rights Act of 1964, 42 U.S.C. §2000(e), et seq., and the Pennsylvania Human Relations Act ("PHRA") 43 P.S. §951 et seq.

## II. JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked, and venue is proper in this district pursuant to 28 U.S.C. §1331, 42 U.S.C. §2000e-5, and §1391(b)(2) as Plaintiff Murray's claims are substantially based on Title VII and the ADEA and a

substantial part of the events or omissions giving rise to the claim occurred within this District.

4. The supplemental jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1367 to consider Murray's claims arising under the PHRA.

5. All conditions precedent to the institution of this suit have been fulfilled. On August 11, 2026, the EEOC, issued Plaintiff a Right to Sue Letter, and this action was filed within ninety (90) days of that date. *See Exhibit 1*. Murray's complaint was also timely filed with the Pennsylvania Human Relations Commission. Murray has complied with all prerequisites to jurisdiction in this Court under Title VII and the ADEA. Contemporaneously with filing of this Complaint, Murray has provided a copy to the Pennsylvania Human Relations Commission.

## III. PARTIES

6. Plaintiff, Dorothy Murray, ("Murray') is an adult individual, at all relevant times, 60 years of age, and citizen of the Commonwealth of Pennsylvania, residing at 8 Frederick Drive, Conyngham, PA 18219.

7. Defendant, Thermo Fisher Scientific, Inc., ("Thermo Fisher"), is a Delaware Foreign Business Corporation, registered with the Pennsylvania Department of State, with an address of 168 3rd Avenue, Waltham, MA 02451-

7551. At all relevant times, Plaintiff was employed at the Thermo Fisher office located at 7554 Schantz Road, Allenton, PA 18106.

8. Defendant, Lisa Allesch ("Allesch"), an adult individual, is the manager of Center of Excellence[1] at Thermo Fisher's Allenton, PA location. Her address is c/o 7554 Schantz Road, Allenton, PA 18106

9. Defendant, Laura Kryzymalski, is an adult individual, and is the supervisor of the Center of Excellence at Thermo Fisher's Allenton, PA location. Her address is c/o 7554 Schantz Road, Allenton, PA 18106.

10. At all relevant times, Defendant, Thermo Fisher was acting through its agents, servants, and employees, who were acting within the scope of their authority, course of employment, and under the direct control of Thermo Fisher.

11. The Plaintiff has been employed as an invoice specialist with Thermo Fisher since August 8, 2022. She was constructively discharged February 28, 2026.

12. Thermo Fisher has over 20 employees.

13. The Plaintiff is 60 years of age and is an "employee" as defined by the ADEA and PHRA.

14. Thermo Fisher intentionally discriminated against Plaintiff because of her

[1] A centralized accounts-receivable department.

age, ancestry and national origin and created a hostile work environment. Allesch and Kryzymalski harassed the Plaintiff because of her age, ancestry and national origin.

15.Plaintiff is 60 years of age and an Irish immigrant. The Defendants intentionally discriminated against, retaliated against and harassed the Plaintiff because of her age, ancestry and national origin.

16. The Plaintiff experienced a pattern and practice of harassment since September 2023, after returning to work from knee replacement surgery.

17. Beginning around September 2023, the Plaintiff was targeted by her supervisor, Laura Kryzymalski, for errors in her work. While other younger employees doing similar work also had errors, it was only the Plaintiff that was targeted. Despite the existence of a computer program that could help detect errors, the Plaintiff was not provided with the opportunity, nor training, to use it. Other employees were aware of the program and used it to detect errors.

18.The number of invoices processed by the Plaintiff always exceeded the performance target set by Thermo Fisher.

19.Kryzymalski also accused the Plaintiff of generating performance reports of another work site, outside of the United States. The Plaintiff did not run the reports as accused and explained this to Kryzymalski. She apologized for jumping to conclusions about the Plaintiff. Yet, a few weeks later, she disciplined

her for allegedly raising her voice when defending herself against Kryzymalski's false accusations. The Plaintiff was also locked out of the ability to communicate with the Horsham team within 30 minutes of Kryzymalski's false accusations.

20.Keri King, Director of HR, suggested that the Plaintiff file an internal ethics complaint when the Plaintiff told her about the false accusations Kryzymalski made against her. A campaign of harassment continued until the day of the Plaintiff taking a medical leave of absence.

21.Kryzymalski would exclude the Plaintiff from social interactions with the team outside of work hours, such as a visit to Dorney Park with their husbands and children. She told the Plaintiff that she didn't think "she would be up for it." The Plaintiff understood this to mean that she would not be able to keep up with the group because of her age.

22.Kryzymalski seemed to be attempting to isolate the Plaintiff from the work group and would demean her in front of others. The Plaintiff reported to both Kryzymalski and Allesch (Kryzymalski's supervisor) that she suffers from PTSD from bullying, harassment, and isolation during childhood. She was concerned that their behavior at work was triggering her PTSD.

23.In 2023, based upon knowledge, information and belief, the Director of Finance, Elisha Turner, sent a message to employees cautioning employees to refrain from making comments on individual's personal appearance. It is believed

Kryzymalski's conduct towards a subordinate was the reason for this email. The email advised employees that it was "disappointing to hear to (sic) individuals do not feel comfortable due to comments made from fellow colleagues." Employees were cautioned to" be mindful of your Teams messages and comments made in the office to avoid comments taken out of context."

24. Kryzymalski engaged in a pattern of increased scrutiny and unwarranted criticism of the Plaintiff in what appeared to be a targeted attempt of harassment, retaliation, and marginalizing the Plaintiff within the organization.

25. Another supervisor, Lisa Allesch, told the Plaintiff that she reminded her of "Denise." This is another female employee of Irish descent. Lisa Allesch suggested that both the Plaintiff and "Denise," were aggressive. The Plaintiff understood this to mean it was because they were both Irish.

26. Denise, also over the age of 60, was forced to resign her position in October 2024 due to the hostile work environment.

27. Another employee, "Tina," an employee over 60 years of age, was put on a Performance Improvement Plan (PIP) by Kryzymalski. She was fired in April 2025 despite a successful probationary period.

28. The Plaintiff had advised Allesch that she felt she was being targeted due to her age, ancestry and national origin. In response, Allesch said, "oh everybody loves your accent and that ohh I am just a few years younger than you."

29. During the period of employment with Thermo Fisher, the Plaintiff applied for 5 different promotions or changes in work assignments. Each time she was denied, despite being qualified for the position. Younger employees were selected for the positions. Her last denial of promotion was January 2025.

30. Both supervisors demanded that the Plaintiff notify them before any interviews for promotion. On one occasion, the Plaintiff received only 24 hours notice prior to her interview, yet she was reprimanded for poor communication skills. It was the understanding of the Plaintiff that notifying immediate supervisors when applying for another position within the company was only a guideline and not a mandated policy.

31. On several occasions, Allesch and Kryzymalski would reprimand the Plaintiff without investigating an issue and then apologize when they found out they were mistaken. Kryzymalski would single out the Plaintiff in group chats with instructions. Based upon knowledge, information, and belief, Kryzymalski would privately offer corrective advice to others.

32. The Plaintiff reported Kryzymalski's conduct to the Ethics division of the Human Resources Department. The Plaintiff was advised that there were other complaints about Kryzymalski. After the internal investigation, it was determined that Kryzymalski violated the company's ethos and was coached about improving

her interactions with the Plaintiff. No further action was taken against Kryzymalski, and her campaign of harassment, retaliation, and discrimination against the Plaintiff continued.

33. On or about January 24, 2025, the Plaintiff was advised that Kryzymalski posted a picture on Facebook she believed to be due to her ethics report. The post read "Coworkers will snitch on you at work then come talk to you like they ain't just snitch on you."

34. The Plaintiff was advised by multiple co-workers that they believed she was being pushed out of the company. Based upon knowledge, information, and belief, the Plaintiff's supervisors, Kryzymalski and Allesch, had another employee monitoring errors through the creation of an Excel spreadsheet. Only the Plaintiff appears to have been targeted by this type of covert monitoring. The employee that was doing the monitoring opted out of participating in such conduct.

35. The Defendant, Thermo Fisher Scientific, did not adequately supervise or train their supervisory employees on preventing, investigating or responding to age, ancestry, or national origin discrimination and thereby acquiesced to the harassment, retaliation and discrimination.

36. Upon returning from vacation in September 2025, the Plaintiff was summoned to a meeting the day she returned to work. She was advised by

Kryzymalski that she was being put on a PIP (Performance Improvement Plan) for 60 days, due to the amount of her errors in July and August. It should be noted that during this time, the Plaintiff's son was deployed to an active combat zone in Syria. Based upon knowledge, information and belief, other employees also had errors but were not put on an improvement plan. The Plaintiff's rate of correct invoices was 99%.

37. Being placed on the PIP has exacerbated the Plaintiff's PTSD. It was the opinion of her healthcare provider that she should apply for FMLA and a leave of absence was necessary for health and psychological reasons.

38. The Plaintiff had satisfactory job performance prior to leaving for knee surgery. She had been assigned to the Horsham, UK, site and was transferred to the US team. Kryzymalski had told her it was due to her errors, but the Plaintiff later learned from Elisha Turner, Director of Finance, that it was because Horsham was overstaffed. When the Plaintiff attempted to clarify that the transfer was not because of errors, she was advised that everyone makes errors because the system is "so manual." The transfer resulted in a loss of income of about $5-6K per year.

39. The Plaintiff began a short-term disability leave beginning November 28, 2025, due to the hostile environment at work. At the time of this leave, she

earned approximately $54,000 per year. She was forced to resign her position on February 28, 2026, due to the ongoing discrimination, harassment and retaliation.

40. As a direct result of the unlawful age, ancestry, and national origin discrimination, hostile work environment, and harassment the Plaintiff has experienced loss of earnings and/or earning capacity, loss of benefits, embarrassment, stress, anxiety, inconvenience, mental anguish, loss of enjoyment of life, physical illness, sleep disturbances, and emotional distress.

41. The Defendants discriminated, harassed and retaliated against the Plaintiff thereby affecting her terms, conditions, and privileges of employment because of her age, ancestry, and national origin. She was subjected to adverse employment actions in the form of denied promotions, a PIP (Performance Improvement Plan) that appeared to be targeted and retaliatory. She was forced to take short-term disability leave because of the Defendants' conduct.

42. By failing to adequately investigate, discipline, train, and supervise Defendant's employees, Thermo Fisher acquiesced to the conduct described in this Complaint and other unlawful conduct. Because of the foregoing and the conduct described in this Complaint, Thermo Fisher, acting through its servants, agents and employees, knowingly permitted and created a hostile work environment because of Plaintiff's age, ancestry and national origin. The discrimination was sufficiently

severe and pervasive to alter the terms, conditions and privileges of Plaintiff's employment.

43. Thermo Fisher has failed to adequately train and supervise employees regarding the prevention, identification, reporting, and effects of age, ancestry, and national origin discrimination, harassment and retaliation upon victims thereby allowing a culture of tolerating such conduct.

**COUNT I**
**Title VII- Ancestry and National Origin Discrimination, Harassment, Retaliation and Hostile Work Environment**
**Plaintiff v Thermo Fisher**

44. Plaintiff incorporates the preceding paragraphs by reference as though fully set forth at length herein.

45. Plaintiff is an "employee" as defined by 42 U.S.C. §2000e(f).

46. Thermo Fisher is Plaintiff's "employer" within the meaning of 42 U.S.C. §2000e(b).

47. The actions of the Defendant, through its agents, servants, and employees, in subjecting Plaintiff to a hostile work environment, ancestry and national origin harassment and discrimination, constituted a violation of Title VII by open, severe, and pervasive conduct.

48. Members of management harassed, discriminated against Plaintiff

because of her ancestry and national origin and retaliated against her for reporting their conduct to human resources. The conduct of management towards the Plaintiff would be offensive to a reasonable person.

49. Punitive damages are warranted because the conduct was intentional, willing, and done with malice and/or reckless indifference to Plaintiff's rights.

50. As a direct result of the unlawful discriminatory employment practices engaged in by Defendants in violation of Title VII, the Plaintiff has sustained loss of earnings, denial of promotions, severe emotional, physical, and psychological distress, loss of self-esteem, loss of future earning power, humiliation, insult, and seeks front pay, back pay, and interest due thereon.

**COUNT II**

**Violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§621-634**

**Plaintiff v Thermo Fisher**

51. Plaintiff incorporates the preceding paragraphs by reference as though fully set forth at length herein.

52. Plaintiff was 60 years old and qualified for her position when she was constructively discharged by Thermo Fisher on February 28, 2026.

53. Defendant's employees, Allesch and Kryzymalski, regularly made discriminatory comments to Murray and her coworkers related to her age.

54. Thermo Fisher marginalized and treated Murray differently while

treating younger similarly situated employees more favorably. Other employees were not subjected to the increased and intense scrutiny that Plaintiff experienced and such other conduct described in this Complaint.

55. After the Plaintiff's constructive discharge, Thermo Fisher replaced her with a younger employee, from outside Thermo Fisher, with no experience in the pharmaceutical billing industry.

56. Murray has sustained damages because of Thermo Fisher's unlawful discriminatory actions, including past and future lost wages and benefits and the costs of bringing this action.

57. Defendant willfully violated Murray's rights under the ADEA, and, as a result, are liable for liquidated damages.

## COUNT III

## Violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§621-634- Retaliation
## Plaintiff v Thermo Fisher

58. Plaintiff incorporates the preceding paragraphs by reference as though fully set forth at length herein.

59. Plaintiff was 60 years old and qualified for her position when she was constructively discharged by Thermo Fisher. A reasonable person in the same or similar conditions would have felt compelled to resign.

60. Defendant's employees, Allesch and Kryzymalski, regularly made

discriminatory comments to Murray and her coworkers related to her age. She reported this conduct to Thermo Fisher's Human Resources Department and was advised to file an internal complaint. Her report constitutes protected activity.

61. Thermo Fisher marginalized and treated Murray differently while treating younger similarly situated employees more favorably. Other employees were not subjected to the increased and intense scrutiny that Plaintiff experienced and such other conduct described in this Complaint.

62. The Plaintiff was constructively discharged when she was forced to resign her position with Thermo Fisher on February 28, 2026, due to the ongoing harassment and retaliation by the Defendant's management employees because of her complaint. Any complaints about her work performance are pretextual and baseless.

63. Murray has sustained damages because of Thermo Fisher's unlawful discriminatory actions, including past and future lost wages and benefits and the costs of bringing this action.

64. Defendant willfully violated Murray's rights under the ADEA, and, as a result, are liable for liquidated damages.

## COUNT IV

## Pennsylvania Human Relations Act – Age, National Origan, and Ancestry Discrimination, Harassment and Hostile Work Environment

## Plaintiff v Defendants

65. Plaintiff incorporates the preceding paragraphs by reference as though fully set forth at length herein.

66. The actions of Thermo Fisher, through its agents, servants and employees, and by the actions of the individual Defendants, in subjecting the Plaintiff to a hostile work environment, age, ancestry, and national origin harassment, discrimination and retaliation, constituted a violation of the Pennsylvania Human Relations Act (PHRA).

67. By reason of the conduct described in this Complaint, the Defendants unlawfully discriminated against the Plaintiff because of her age, national origin and/or ancestry wih respect to the terms, conditions, and privileges of employment and thereby constructively discharged the Plaintiff effective February 28, 2026. In doing so, the Defendants violated the PHRA.

68. As a direct result of the unlawful discriminatory employment practices engaged in by the Defendants in violation of the PHRA, the Plaintiff has suffered permanent and irreparable harm causing her to sustain loss of earnings, loss of retirement benefits, loss of insurance benefits and other fringe benefits, loss of the opportunity to continue in the gainful employment in which she had engaged, severe emotional, physical, and psychological distress, loss of self-esteem, humiliation, embarrassment, adverse health effects, loss of future earning power, and seeks front pay, back pay, and interest due thereon.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that a judgment be entered in her favor and against Defendants and order:

a. Defendants to pay Plaintiff compensatory and punitive damages, as permitted, on all counts herein;

b. Defendants to pay attorneys' fees and expenses pursuant to 29 U.S.C. §216(b), costs of suit, interest, and expert witness fees as allowed;

c. Defendant Thermo Fisher to compensate Plaintiff with a rate of pay and front pay and back pay plus interest, compensation for lost fringe benefits, other benefits of employment to which she would have been entitled, including lost earnings, earning capacity and benefits, past and future, had she not been subjected to unlawful discrimination, retaliation, and harassment;

d. Defendant(s) to compensate Plaintiff for punitive damages, as permitted, compensatory damages for future pecuniary losses, mental anguish, personal hardship, social disruption, loss of enjoyment of life, loss of self-esteem, humiliation, embarrassment, and other non-pecuniary loss as allowable;

e. Liquidated damages pursuant to the ADEA;

f. All other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Respectfully submitted,

*s/ Robert J. Boyer, Esq.*

Robert J. Boyer, Esquire / Id. No. 327782
126 South Main Street
Pittston, PA 18644
570-407-2703 (phone)
570-654-6509 (fax)
BoyerLaw@comcast.net